## Application of CODOMO.

Railroad & Public Utilities Commission.

June 21, 1950.

---

Charles Danton, Miami Beach, for applicants.

George M. Powell, Tallahassee, and Mallory H. Horton, Miami, for the Attorney General.

Harold B. Wahl, Jacksonville, and John H. Wahl, Jr., Miami, for Southern Bell Tel. & Tel. Co.

Lewis W. Petteway and Guyte P. McCord, Jr., both of Tallahassee, for the Commission.

Chairman WILBUR C. KING, Commissioner JERRY W. CARTER and Commissioner RICHARD A. MACK participated in the hearings and disposition of the cause.

BY THE COMMISSION.

Leonard and Janet Codomo who reside at 3014 Pine Tree Drive, Miami Beach, are the owners of the property and premises situated in Dade County and commonly known as Suburban Club Apartments at 1539 N. E. 121st Street, Miami. The property is improved with a large modern apartment hotel building consisting of 54 units, together with a swimming pool and cabanas. Guests of the apartment hotel are about evenly divided between transients and permanent residents. Telephone service for the apartment hotel is provided by Southern Bell Tel. & Tel. Co. through a private branch exchange switchboard installed by the company on November 29, 1949. Individual handset telephones in each apartment are connected with the switchboard which is operated by employees of the Codomos.

On May 2, 1950, Southern Bell Tel. & Tel. Co. was notified in writing by the Attorney General that a raid was made on an apartment on the third floor of the Suburban Club Apartments (apt. no. 312) located at 1519-1539 N. E. 121st St., Miami, on April 10, 1950, and it was found that a fake electric conduit pipe had been installed on the north side of the building connecting into the terminal service room and running up and into the apartment which was raided. The company was notified that the conduit carried telephone wires tapped into the apartment house telephone terminal box to the telephone switchboard connections and could be operated only with the knowledge and assistance of the apartment house management. The Attorney General also notified the company that the unauthorized and illegal extensions were used for the transmission of illegal gambling information and that the switchboard and all connections thereto should be removed at the earliest possible moment.

The Codomos were notified by the company that service would be discontinued as requested by the Attorney General. Subsequently, the Codomos filed a proceeding in the federal district court asking to restrain the discontinuance of telephone service. This proceeding was dismissed when the Attorney

General intervened by leave of court as a party and removed the prerequisite diversity of citizenship. The Codomos then addressed a communication to this commission dated May 15, 1950 requesting a hearing on the discontinuance of the service under chapter 25016, Laws of Florida, Acts of 1949. However, they were notified that chapter 25016 was not involved, that service was being discontinued under a rule of the commission requiring all telephone companies to discontinue telephone service when notified by a law enforcement officer that such service was being used for illegal purposes, and that the commission, under the rule, would not grant a hearing until after service actually had been discontinued. A copy of the rule was furnished the attorney representing the Codomos at the time. The Codomos then applied to the circuit court of Dade County for an order restraining the discontinuance of the telephone service. However, temporary injunction was denied on the ground that the matter should be presented to this commission as provided for in its rule.

The telephone service was actually discontinued by the telephone company shortly after 5 P. M. on Wednesday, May 24, 1950. On May 25, 1950, the Codomos, through their attorney, filed with this commission written request for a hearing under the commission's rule aforesaid. Formal notice of the hearing was issued on June 6, 1950, and the hearing held pursuant thereto on Thursday, June 15, 1950, in the commission's hearing room, 700 South Adams Street, Tallahassee.

The commission's rule which is involved in this proceeding was adopted by the commission on March 27, 1950, by order no. 1592, pursuant to notice and public hearing. The rule provides that:

"Each and every telephone and telegraph company operating within the state of Florida, under the jurisdiction of this commission, shall furnish service subject to the condition that it will not be used for an unlawful purpose.

"Whenever application is made to any such utility for the installation of any telephone or telegraph facility at any location within the state of Florida, said utility shall refuse to install the same when it has reasonable grounds to believe that said facility will be used in violation of the law.

"Whenever any new or additional service is furnished to any applicant, the records of the utility shall show, in the case of business telephones, the business classification designated by the applicant.

"Whenever any such utility is notified in writing by any state or federal law enforcement officer acting within his apparent jurisdiction, either directly or through this commission, that certain telephone or telegraph facilities, or any part thereof, are being used or have been used in violation of any federal law or the laws of the state of Florida, then such utility shall disconnect and remove such facilities and discontinue all telephone and telegraph service rendered over said facilities.

"Whenever installation of any telephone or telegraph facility has been refused, or said facility has been disconnected and service thereover discontinued, under this rule, said utility shall report the same to this commission. Any person aggrieved by the action of the utility shall be entitled to present the matter to this commission for its review and determination. If, after consideration, the commission determines that said party is entitled to said facilities and service, and that the same will not be used in the future for unlawful purposes, then and in that event, the commission may authorize the utility to provide said facilities and service."

The above rule does not provide for a hearing by the commission on the question whether or not the Attorney General or other law enforcement officer, or the telephone company, have sufficient grounds for discontinuing the service prior to the actual discontinuance thereof. The purpose of the hearing provided for in the rule is to give an aggrieved party an opportunity to have telephone service reinstated upon satisfactory showing that it will not be used in the future for unlawful purposes. The law appears to be well established that a telephone company cannot be required to furnish telephone service to be used for illegal purposes, nor is it necessary for a law enforcement officer to supply a telephone company with probative facts in support of a notice of illegal use in order for the telephone company to discontinue service pursuant to such notice. The telephone company may rely upon the notice of the law enforcement officer, and this commission will not intervene therein for the purpose of interfering with the discontinuance of telephone service under the aforesaid rule.

In matters of this kind this commission will participate only after the service has actually been discontinued and then only for the purpose of determining whether or not the party in question is entitled to the service. In determining whether or not the party is entitled to the service, this commission will be primarily concerned with whether or not the service will be used for illegal purposes in the future. Testimony concerning past use will be considered by the commission not for the purpose of determining whether or not service should have

been discontinued by reason thereof, but rather for whatever consideration it may be entitled to in determining the probabilities of illegal use in the future.

In determining whether or not service should be restored in cases of this kind the commission feels that it should give some consideration to the period of time over which the party has been or should be deprived of such service. Of course, the discontinuance of service should be a continuing matter until satisfactory showing has been made that it will not be used in the future for illegal purposes. However, the matter of future use is not something that can be determined with absolute certainty. The showing may lead a reasonable man to the conclusion that future use will be perfectly proper and legal and yet, subsequent conditions and circumstances may intervene to destroy the correctness of that conclusion. It is the opinion of the commission that a penalty period would have a salutary effect upon the owners of property and encourage a closer supervision and control by them of the use of their property which might be occupied and used by others. The commission has given consideration to these elements in this proceeding.

The raid on apartment no. 312 of Suburban Club Apartments was conducted on April 10, 1950, by deputy sheriffs of Dade County at the request of an assistant attorney general. The deputy sheriffs were armed with search warrants. The door to apartment no. 312 was forced by the deputy sheriffs and an extremely long table with twelve telephone positions was found set up in the apartment. The table was equipped with twelve telephone lines, busy lamp, and operating key. Tied in to this equipment was a desk type telephone with single head receiver for each of the twelve positions. In a closet in the same room the raiding party found several hand combined type telephone instrument sets. There was a loudspeaker in the room and a bulletin board opposite the end of the table. There was also an air conditioning unit in the apartment although the owners of the property testified before the commission that they had not installed the same. Originally the apartment was furnished with the usual efficiency apartment furniture for living purposes. At the time of the raid there was no furniture in the apartment other than the elaborate telephone table, several straight chairs and the air conditioning unit. The telephone equipment found in the apartment was seized and is being held by the Dade County sheriff.

Some of the telephone hand sets found in the closet of the

apartment were labeled as Southern Bell property. However, at the hearing before the commission the telephone company representatives testified that they did not install any of the telephone equipment in apartment no. 312 and that they did not know of its existence there until it was discovered the day of the raid. Representatives of the telephone company were present at the time of the raid and have testified that the telephone equipment in apartment 312 could not be used except through the main switchboard and with the co-operation of the switchboard operators.

Leonard Codomo testified before the commission that he and his wife, Janet Codomo, own several pieces of rental property in Dade County, including the Suburban Club Apartments. He further testified that he knew nothing about the tenant of apartment 312 or the telephone equipment which was found there as a result of the raid of April 10, 1950; that when he heard about the raid he questioned his manager of that piece of property concerning the tenant and use of apartment 312 and not being satisfied with his answers he discharged the manager and had not replaced him; that he originally hired the manager about one year ago without making any investigation concerning his character, reputation, ability or otherwise, and without knowing much about him; that the switchboard operators who were in his employ on the day of the raid and before have been looking after the property for him. Leonard Codomo further testified that he visited the property about every two weeks to inquire of the manager concerning the occupancy; that he did not know of the occupant of apartment 312 but had been informed by the manager that he was a traveling salesman who had leased the property for one year paying the rental in advance and expressly stating that he did not want anyone to enter the apartment because of some valuable sample cases he kept there; that after the raid the apartment had remained vacant, the door had not been repaired so far as he knew; and that he as owner of the property where the raid was made had not since the raid made any visit to apartment 312 and did not know what condition it was in. The owner of the property further testified that he has negotiated a sale of the property; that the negotiations were begun prior to the raid and are presently being held up until it is determined whether or not telephone service will be restored; that so long as he has anything to do with the property he will take extraordinary precautions to see that telephone service to

the property is not used for illegal purposes and that his prospective purchasers have assured him that they will do likewise. No one testified for the owners of the property other than Leonard Codomo.

At the beginning of the hearing the owners of the property through their attorney stated to the commission that they did not question the fact that the elaborate telephone table and set-up was found in apartment 312 and that it was used or intended for illegal use but their only purpose was to show that they had no connection with its installation and would see that no similar illegal installations were made on the premises in the future.

The principal witness for the Attorney General's office, James B. Toney, an assistant attorney general who has been assigned to and has led the Attorney General's investigations of bookmaking operations in the state, qualified as an expert concerning types of telephone equipment used in bookmaking establishments and also concerning the various types of establishments which have a part in making up the overall bookmaking racket. It was the opinion of this witness that the elaborate communications set-up found by him and the deputy sheriffs on April 10, 1950, in apartment 312, Suburban Club Apartments, was a relay point used in furnishing racing information to bookmakers in the Miami area. This opinion was somewhat supported by the testimony of Donald Petit, a reporter of the Miami Daily News, concerning one Danny Deutsch who was found to be a runner at Gulfstream race track just shortly before the raid on Suburban Club Apartments on April 10. It appears that Deutsch would secure certain information from inside the enclosure at Gulfstream and then proceed to a telephone outside and relay his information to some other source. The calling telephone number of Suburban Club Apartments was found on Deutsch and the reporter Petit called the number about ten in the morning and asked if Danny Deutsch was there. He was advised that Deutsch was not there at the time. The reporter then inquired if Deutsch would be found at his usual place at Gulfstream track and he was advised that he would.

Against the factual background which we have outlined, this commission is requested by Leonard and Janet Codomo to authorize the immediate restoration of telephone switchboard service at their Suburban Club Apartments.

In view of the fact that this is the first proceeding of this

kind to come before the commission, we feel that some discussion of the law is appropriate. We have previously pointed out that this proceeding is brought under the rule adopted by the commission on March 27, 1950, prohibiting the furnishing of telephone or telegraph service when the same is intended for use, will be used, has been used or is being used in violation of law. Originally, the applicants for restoration of telephone service attempted to secure a hearing under chapter 365, Florida Statutes, 1949, Vol. I, which is the same as chapter 25016, Laws of Florida, Acts of 1949, and more commonly referred to as the "Bookie Law."

At the beginning of the hearing the Attorney General filed with the commission in this proceeding a sworn answer and motion to dismiss. In paragraph 3 of the sworn answer the Attorney General ". . . denies said chapter 365 has any connection with, or any relation to the matter being heard herein; for this that the action of the Attorney General and of the Florida Railroad & Public Utilities Commission in dealing with the properties of the said Leonard and Janet Codomo did not proceed under said chapter 365, but on the contrary under and by virtue of a rule of said commission duly passed and adopted by said commission as shown by the order of said commission no. 1592 . . ."

The Attorney General has correctly analyzed this proceeding as being under the commission's rule rather than chapter 365 or chapter 25016, supra.

Chapter 25016, Laws of Florida, Acts of 1949, commonly known as the "Bookie Law," was entitled by the legislature as "An Act to Regulate Public Utilities in the furnishing to Others of Private Wire Service and Other Similar Service for the Dissemination of Information, to Regulate the Use of Such Services and Prohibit the Use of Same for Gambling Purposes, and to Provide Remedies and Penalties for the Enforcement thereof."

In defining what is a "private wire" and therefore what type of facility and service is embraced within the provisions of the law, the legislature for some reason unknown to this commission saw fit to specifically exclude from that definition, and from the provisions of the law, "the usual and customary telephone or teletypewriter service by which the subscriber may be connected at each separate call to any other telephone or teletypewriter designated by him only through the general telephone

or teletypewriter exchange system or toll service . . ." . Under this definition the telephone switchboard at Suburban Apartments is not a "private wire" and does not come within the provisions of chapter 25016, supra, because it was a part of and could be used only through the general telephone exchange system.

Undoubtedly those interested in the bookmaking racket frequently resort to regular exchange telephone service in the conduct of their business. It is inconceivable that they could operate successfully without such service. It is difficult, therefore, to understand why the legislature specifically excluded this type of service from its law prohibiting the use of "private wires" in the dissemination of gambling information.

In an effort to strengthen the hand of the Attorney General and other law enforcement officers of the state, and at the same time recognize by rule the duty of telephone and telegraph companies to refuse telephone or telegraph service when used or intended for use for illegal purposes, this commission acting under its general jurisdiction and control over telephone and telegraph companies promulgated its rule prohibiting the furnishing of telephone or telegraph service when the same is intended for use in violation of law.

The courts have long recognized that it is the duty of telephone companies to refuse to furnish telephone service where the utility knows or has reason to believe that such service will be used for illegal purposes. Likewise, the courts have consistently refused to require telephone companies to furnish service under such circumstances. The commission's rule which is involved in this proceeding is a recognition of that duty, the exercise of which the courts have consistently upheld.

There has been injected into this proceeding the plea that the owners of the property in question were without knowledge of the illegal operations conducted on their property and that they should not be punished for the illegal acts of their tenants. Such a plea, in the opinion of the commission, is wholly without merit. The situation involved here is somewhat similar to the illegal sale of intoxicating liquors on leased premises by a tenant. In such cases the courts have consistently held that it is not necessary to show that the owner had knowledge, or even reason to believe, that intoxicating liquor was being sold on the premises by a tenant, in order that the court may enjoin the sale of liquor thereon, or close the premises for all purposes.

It is the opinion of this commission that the owner of rental property is under an obligation to see that his property is not used contrary to the laws and the public policy of the state. Bookmaking in all of its aspects is contrary to the laws and the public policy of the state of Florida. The state's efforts to break up bookmaking operations and the use of telephone facilities in connection therewith have been in the public press almost daily for the past year particularly in the Dade County area. Where the availability of telephone service and facilities are important considerations in the renting of property to transients or permanent guests, and the owner of the property undertakes to furnish that telephone service, then such owner must exercise proper care to see that the telephone service and facilities are not used for illegal purposes if he wants to avoid the risk of being deprived of such service and facilities.

In view of the testimony in this proceeding, and based thereon, it is the opinion of the commission and it finds as a matter of fact and as a matter of law that the applicants Leonard and Janet Codomo are not entitled to immediate restoration of the private branch exchange telephone service which was discontinued on May 24, 1950, at the Suburban Club Apartments, and that their application, therefore, should be denied.

It is further the opinion and finding of the commission that the telephone company should be authorized and directed to reinstate private branch exchange telephone service at the Suburban Club Apartments on or after August 24, 1950, the same being ninety days from the date service was discontinued, upon proper application therefor and in the absence of further notice from law enforcement officers that service when reinstated will be used in violation of law.

Now therefore, in consideration thereof, it is ordered, adjudged and decreed that the application of Leonard and Janet Codomo for immediate reinstatement of private branch exchange telephone service at Suburban Club Apartments be and the same is hereby denied. It is further ordered that Southern Bell Tel. & Tel. Co be and it is authorized and directed to reinstate private branch exchange telephone service at Suburban Club Apartments on or after August 24, 1950 upon proper application therefor and in the absence of further notice from law enforcement officers that service when reinstated will be used in violation of law, and the telephone company shall immediately notify this commission when service has been reinstated.